[No. E002655. Fourth Dist., Div. Two. Mar. 24, 1987.]

DAVID CULBERTSON, Plaintiff and Appellant, v.
R. D. WERNER COMPANY, INC., Defendant and Respondent.

COUNSEL

Schlifkin & Papell, Robert S. Schlifkin and Steven J. Kleifield for Plaintiff and Appellant.

Kern & Wooley, Ralph S. LaMontagne, Jr., and Allan J. Favish for Defendant and Respondent.

OPINION

FACTS

**CAMPBELL, P. J.**—Plaintiff appeals from the trial court's award of costs, including expert fees, and the court's denial of his motion to tax costs. Plaintiff sued defendant R. D. Werner Company, Inc. for injuries allegedly received as a proximate result of a design defect in a ladder manufactured by the defendant and provided to the plaintiff by his employer. Defendant's discovery established that the ladder had been modified by replacing the original foot pads with foot pads of incorrect size, replacement of recessed rivets that were not recessed and by the use of washers on the rivets. (The defendant does not use washers in its manufacturing process.) The defendant's defense was that if the ladder slid causing the plaintiff to fall, the slide was caused by the modification made to the ladder after the ladder left the possession of the defendant.

Plaintiff was diagnosed as having a ruptured intervertebral disc and the plaintiff made a demand of $1.5 million for settlement.

The results of defendant's discovery not only included the fact that the ladder had been modified after it had left the possession of the defendant, but also: (1) investigation films showing plaintiff engaging in strenuous activities which were inconsistent with his claimed injuries,[1] (2) an independent

---

[1] These investigation films were neither discovered by plaintiff nor was any inquiry made as to the defendant's knowledge or possession of any such films.

medical examination indicated a degenerative lumbar disc disease which antedated plaintiff's accident, (3) the discovery of a back injury 15 years earlier requiring approximately 10 months of treatment, (4) interrogatories and depositions of other employees of plaintiff's employer, and (5) depositions of employees of two subcontractors that plaintiff's employer used to recondition the ladders.

On or about February 1, 1985, the defendant made a timely compromise settlement offer of $5,000 pursuant to Code of Civil Procedure section 998.[2] The plaintiff rejected the defendant's offer.

On March 1, 1985, plaintiff's employer's workers' compensation insurance carrier filed a lien in the amount of $36,239.64 against any settlement or judgment rendered in favor of the plaintiff.

After a trial of the action, the jury returned a verdict in favor of the defendant. The defendant filed a cost bill including costs incurred for services of experts after the rejection by the plaintiff of the defendant's section 998 offer and the plaintiff filed a motion to tax costs, objecting to the experts' fees. After a hearing on the motion to tax costs, the trial judge awarded defendant costs pursuant to section 998, subdivision (c) in the amount of $25,497.43, including $17,868.42 for services of expert witnesses. Plaintiff's motion to tax defendant's costs for expert witness services was denied. This appeal followed.

ISSUES

The contentions raised on appeal are: (1) Considering the $36,239.64 lien filed by his employer's workers' compensation insurance carrier, plaintiff would net zero dollars, and could not reasonably have been expected to accept an offer of $5,000, (2) defendant's $5,000 statutory settlement offer was neither in "good faith" nor was it "realistically reasonable" under the circumstances, but merely a "token" or "nominal" offer made so that defendant would qualify for the costs of expert witnesses, and (3) in light of (1) and (2) above, the trial court abused its discretion in allowing defendant's expert witness fees.

I

Plaintiff cites Labor Code sections 3856, subdivision (b) and 3862 in his effort to persuade this court that if he had accepted defendant's $5,000 settlement offer, anything that remained from the $5,000, after payment of

---

[2]All statutory references are to the Code of Civil Procedure unless otherwise noted.

reasonable attorney's fees and costs, would have been subject to the workers' compensation carrier's lien.

Labor Code section 3856, subdivision (b) sets out the priority of payments received from any judgment, including liens, and Labor Code section 3862 allows a lienholder to perfect and satisfy his lien against a judgment. Plaintiff argues that, under these circumstances, the $5,000 offer was therefore "token" or "nominal" and plaintiff could not have reasonably been expected to accept this offer. We disagree.

Plaintiff has not shown that defendant was even aware of the workers' compensation lien at the time of defendant's compromise offer. Plaintiff admits being served with defendant's offer on February 1, 1985, and notice of the workers' compensation lien was not filed until March 1, 1985.

Plaintiff does not cite, nor do we find, any authority holding that a defendant must take into consideration any liens pending against a possible settlement or judgment when evaluating his case for the purpose of making a settlement offer. Defendant's duty under section 998 is to make a reasonable offer under the circumstances. To hold otherwise could lead to absurd results, especially when such offer is contemplated by a liability-free defendant. For instance, assuming defendant was aware of the lien, he would have had to offer plaintiff $41,239.64 ($5,000 plus $36,239.64) to enable plaintiff to net $5,000 before costs and attorney's fees. This is an unreasonable burden to place on defendants and is contrary to the intent of the Legislature in the passage of section 998. (This is not to say that the judge may not take such liens into consideration, along with other evidence, discussed *infra,* when *exercising his discretion* to award or deny expert witness fees.)

## II

■ Plaintiff's second contention on appeal is: Defendant's $5,000 statutory settlement offer was neither in "good faith," nor "realistically reasonable" under the circumstances, but merely a "token" or "nominal" offer made so that defendant would qualify for the costs of expert witnesses.

Plaintiff's reliance on the *Pineda* and *Wear* cases, cited *infra,* is misplaced.

First, plaintiff relies on *Pineda* v. *Los Angeles Turf Club, Inc.* (1980) 112 Cal.App.3d 53 [169 Cal.Rptr 66]. In this case, plaintiffs (in a wrongful death action) sought damages in the amount of $10 million. The defendant, McHal, made a statutory settlement offer of $2,500. Plaintiffs did not accept the offer. Judgment was subsequently rendered in favor of defendant, McHal,

who filed a memorandum of costs in the amount of $34,155.95. The trial court disallowed expert witness fees in the amount of $24,284.24.

On appeal, the court stated: "*Under the circumstances of this case* the trial court had *ample reason* to find that the offer was not reasonable. Although McHal's liability was *tenuous* indeed, having in mind the enormous exposure the trial court could find that McHal had no expectation that its offer would be accepted. From this it follows that the sole purpose of the offer was to make McHal eligible for the recovery of large expert witness fees at no real risk.

"While the court's statement that the offer was not made 'in good faith' was, perhaps, unnecessarily strong, the record certainly supports its statement that it was not 'realistic.' No abuse of discretion is shown." (*Pineda, supra*, at p. 63, italics added.)

The second case plaintiff relies on is *Wear* v. *Calderson* (1981) 121 Cal.App.3d 818 [175 Cal.Rptr. 566]. The *Wear* case involves a settlement offer of $1 pursuant to section 998 and a jury finding in favor of one defendant, Calderon. Calderon filed a cost bill including expert witness fees. After a hearing, the trial court awarded these costs to Calderon.

In reversing, the appellate court stated:

"[T]he pretrial offer of settlement required under section 998 must be *realistically reasonable under the circumstances of the particular case. Normally,* therefore, a token or nominal offer will not satisfy this good faith requirement . . . .

". . . Here, plaintiff did not ask for a specific sum of damages in his aforementioned complaint, but, in view of the fact that the jury awarded him $18,500 in damages, he must have been seeking a substantial sum in damages in this litigation, and defendant Calderon must have so understood. A plaintiff may not reasonably be expected to accept a token or nominal offer from any defendant exposed to this magnitude of liability *unless it is absolutely clear that no reasonable possibility exists that the defendant will be held liable.*" (*Wear, supra*, 121 Cal.App.3d at p. 821, italics added.)

Reduced to its simplest terms, the essence of plaintiff's argument is that the filing of a complaint for damages, no matter how unmeritorious the claim might be, imposes upon a defendant, no matter how meritorious its defense may be, an obligation to reward the plaintiff by making an offer of settlement which would liquidate any outstanding liens, pay plaintiff's attorney's fees and costs and yield some significant sum to the plaintiff, or lose the benefits

of section 998. That, of course, is diametrically opposed to the clear language and intent of section 998. Such a strained interpretation of the statute and the cases would result in an increase of spurious lawsuits and a reduction in the number of settlements.

The *Pineda* and *Wear* cases have provided us with such terms as, "realistically reasonable," in "good faith," "token," or "nominal." Although all of these terms have distinct meanings, the issue remains the same: Did the trial court abuse its discretion in the granting of, or the denial of, expert witness fees? █ The burden of proving error is to convince the court, by stating the law and calling relevant portions of the record to the court's attention, that the trial court decision contained reversible error. (*Marriage of Behrens* (1982) 137 Cal.App.3d 562, 574 [187 Cal.Rptr. 200]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712 [152 Cal.Rptr. 65]; *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226 [74 Cal.Rptr. 749].)

"Where . . . discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79], and see other cases there cited.)

█ Plaintiff has not met his burden of convincing this court that the trial judge exercised his discretion in an arbitrary, capricious or patently absurd manner.

The operative phrases to be taken from the *Pineda* and *Wear* cases are, "under the circumstances of this case," (*Pineda, supra,* 112 Cal.App.3d at p. 63), and "realistically reasonable under the circumstances of the particular case" (*Wear, supra,* 121 Cal.App.3d at p. 821). Neither of these cases holds that the amount of demand by plaintiff,[3] by itself, is indicative of whether defendant's compromise offer is "realistically reasonable," in "good faith," "token" or "nominal." It is only one of the many factors to be taken into consideration by the trial judge in making his decision. To hold otherwise could force a liability-free defendant to pay for damages not of his doing.[4]

When a defendant perceives himself to be fault free and has concluded that he has a very significant likelihood of prevailing at trial, it is consistent with the legislative purpose of section 998 for the defendant to make a modest settlement offer. If the offer is refused, it is also consistent with the

---

[3]The day of trial, plaintiff's demand settlement was dropped from $1.5 million to $50,000.
[4]The jury below found in favor of defendant 12-0.

legislative intent for the defendant to engage the services of experts to assist him in establishing that he is not liable to the plaintiff. It is also consistent with the legislative purpose under such circumstances to require the plaintiff to reimburse the defendant for the costs thus incurred. It is clear that the Legislature adopted the statute to encourage early settlement of lawsuits to avoid the time delay and economic waste of trial, and to reduce the number of meritless lawsuits by requiring the losing party to pay the costs incurred by the prevailing party.

### III

Section 998, subdivision (c) provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment, the plaintiff shall not recover his or her costs and shall pay the defendant's costs from the time of the offer. *In addition,* in any action or proceeding other than an eminent domain action, the court, *in its discretion,* may require the plaintiff to pay the defendant's costs from the date of filing of the complaint and a reasonable sum to cover costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and *reasonably necessary in either, or both, the preparation or trial of the case by the defendant.*" (Italics added.)

It is well settled that the purpose of this section is to encourage the settlement of litigation without trial. Its effect is to *punish the plaintiff* who fails to accept a reasonable offer from a defendant. (*Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 385 [69 Cal.Rptr. 691]; *Brown* v. *Nolan* (1979) 98 Cal.App.3d 445, 449 [159 Cal.Rptr. 469].)

 It is within the discretion of the trial judge to allow expert witness fees pursuant to section 998, based on failure of an offeree to obtain a more favorable judgment than the settlement offer. In exercising that discretion the trial court must evaluate whether defendant's offer was made in good faith and reasonable under the circumstances, and whether fees sought by the offeror are reasonable and justified in amount.

The plaintiff contends that the defendant's interrogatories and depositions of certain persons were not necessary. These persons were plaintiff's employer and other employees of plaintiff's employer who may have had knowledge concerning the employer's reconditioning of ladders used by the employer. Other depositions included subcontractors used by plaintiff's employer to recondition ladders for the employer. It is obvious that such discovery was mandated by the nature of the plaintiff's complaint. One of the elements plaintiff must prove in a products liability case is that the defect existed when the product left the defendant's possession. It is absurd for

plaintiff to argue that defendant's discovery designed to establish subsequent modification of the product was unnecessary.

In the instant case, the defendant made an offer which was based upon the defendant's analysis of the defendant's chances of being found liable and the nature of the damages that a jury would probably ascribe to the plaintiff's purported fall. Based on the evidence before it, the trial court properly found that the defendant's offer was in "good faith," "realistically reasonable" under the circumstances, and neither "token" nor "nominal." Under the circumstances of this case, the $5,000 offer could be deemed to be generous. Plaintiff has not provided this court with any evidence to the contrary. If the defendant made the $5,000 offer with an understanding that section 998 would justify an award of costs including expert fees, the defendant was proceeding in exact accord with the language and purpose of section 998. We find no abuse of discretion.

The judgment is affirmed.

McDaniel, J., and Hews, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 2, 1987.