[No. A084561. First Dist., Div. Three. Aug. 17, 2000.]

ELLEN ASHDOWN, Individually and as Executor, etc., et al., Plaintiffs and Appellants, v.
AMERON INTERNATIONAL CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is hereby certified for publication with the exception of the part entitled, "Timing of Hearing on Summary Judgment Motion."

[black redaction bars]

## COUNSEL

Law Offices of Christopher E. Grell, Christopher E. Grell and Richard F. Rescho for Plaintiffs and Appellants.

Thomas & Price, Michael Thomas, Paul Ayers; Jackson & Wallace and John R. Wallace for Defendant and Respondent.

## OPINION

**McGUINESS, P. J.**—Appellants' decedent, Gary Smith, expired in April 1994, shortly after he was diagnosed with a terminal asbestos-related disease. This action was brought against respondent Ameron International Corporation (Ameron) by his estate, by and through the decedent's surviving spouse and executor Ellen Ashdown (Ashdown) and his children Kristy Smith and Ian Smith, alleging wrongful death and survival rights of action for negligence, strict liability and loss of consortium caused by his exposure to asbestos during his employment as a pipe inspector for respondent's predecessor company. The trial court granted summary judgment in favor of Ameron, finding that appellants' action was barred by the Workers' Compensation Act, none of the exceptions to the exclusivity of the workers' compensation remedy applied to the facts of this case, and Ameron was entitled to judgment as a matter of law. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gary Smith was employed as a pipe inspector by respondent Ameron's predecessors in interest, Amercoat, Inc. (Amercoat) and American Pipe and Construction Co. (American Pipe) in Brea, California, from 1964 through 1966.[1] Appellant's evidence indicates that during the period of his employment with Amercoat and/or American Pipe as an inspector and tester of pipe, Smith was exposed to asbestos used in respondent's manufacture of asbestos-containing pipes and other related products. Smith became disabled on

---

[1] For purposes of clarity and simplicity in this opinion, where appropriate Ameron and both its predecessors in interest, Amercoat and American Pipe, will be referred to collectively as respondent in the singular.

January 18, 1994. On February 21, 1994, he was diagnosed as having mesothelioma, an asbestos-related disease. Smith died on April 21, 1994.

Appellants filed their initial complaint on May 31, 1994. Although this complaint identified one of Ameron's predecessor companies, American Pipe, as a location where the decedent "used, handled or was otherwise exposed to asbestos and asbestos-containing products" while employed as a "Pipe Inspector" between 1964 and 1966, the complaint did not name American Pipe, Amercoat or Ameron as defendants. On April 9, 1997, appellants filed a motion for leave to file a first amended complaint naming Ameron as a defendant, alleging they had failed to name Ameron as a defendant initially because they had only "recently learned of facts indicating liability of Ameron . . . for the exposure of [decedent Smith] to asbestos materials resulting in his illness and death." Appellants were granted leave to amend.

In its answer to the first amended complaint, respondent asserted as affirmative defenses the exclusivity of the remedy of the Workers' Compensation Act, and appellants' failure to commence their action against respondent within the applicable one-year limitations period. Respondent subsequently moved for summary judgment on these grounds, and noticed a hearing to be held on Friday, July 3, 1998.

On June 15, 1998, appellants' counsel notified respondent's attorney that the motion for summary judgment could not be heard on July 3, 1998, because it was a court holiday in observance of Independence Day. On June 17, 1998, appellants filed an ex parte application requesting an order shortening time setting the date for hearing the summary judgment motion on Thursday, July 2, 1998, or alternatively to allow the motion to be heard closer to the trial date. The trial court granted the motion, and reset the hearing for July 14, 1998. At the conclusion of the hearing, the trial court granted respondent's motion for summary judgment, finding "that there is no triable issue as to any material fact" as to the exclusivity of the workers' compensation remedy under the facts of the case, and appellants had failed to demonstrate that either the dual capacity or the fraudulent concealment exception applied. The trial court entered judgment in favor of respondent, and this appeal timely followed.

## EXCLUSIVENESS OF WORKERS' COMPENSATION REMEDY

The principal issue on this appeal is whether the trial court erred in granting summary judgment upon respondent's motion, based on its finding that under the undisputed facts of this case, appellants' claim does not come

within any exception to the exclusivity of the workers' compensation remedy. Appellants argue that their cause of action accrued, not as of the date of the decedent's death or his asbestosis diagnosis, but at the time of his original *exposure* to asbestos during his employment with respondent's predecessor corporation between 1964 and 1966. On this basis, they urge that the dual capacity exception to workers' compensation exclusivity in effect prior to the 1982 amendment of Labor Code section 3602[2] was applicable to their claim. In the alternative, they argue that even if the decedent's case accrued after the effective date of the amended version of the pertinent statute, there are still triable issues of fact as to whether the fraudulent concealment exception to workers' compensation exclusivity applies to this action. We conclude on the basis of the undisputed evidence that the trial court's grant of summary judgment was correct, and therefore affirm.

### STANDARD OF REVIEW

Any party may move for summary judgment in any action or proceeding by contending that the action has no merit, or there is no defense to the action. (Code Civ. Proc., § 437c, subd. (a).) Code of Civil Procedure section 437c, subdivision (c), *requires* a trial court to grant summary judgment if all the papers and affidavits submitted, together with "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that "there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Ibid.*; 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 217, p. 629.) Where the defendant is the moving party, he or she may meet the burden of showing that a cause of action has no merit by proving either that (1) one or more elements of the cause of action cannot be established, or (2) there is a complete defense to that cause of action. Once that burden is met, the burden *shifts* to the plaintiff to show the existence of a triable issue of one or more material facts with respect to that cause of action or defense. (Code Civ. Proc., § 437c, subd. (o)(2); *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 161-163 [80 Cal.Rptr.2d 66]; *Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385].)

■ "On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law." (*Sangster v. Paetkau, supra,* 68 Cal.App.4th at p. 163; see also *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 741 [41 Cal.Rptr.2d 719]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573,

---

[2]Unless otherwise indicated, all further statutory references are to the Labor Code.

579 [37 Cal.Rptr.2d 653]; *Jambazian v. Borden* (1994) 25 Cal.App.4th 836, 843-844 [30 Cal.Rptr.2d 768]; 6 Witkin, Cal. Procedure, *supra,* Proceedings Without Trial, § 235, pp. 646-647.) In reviewing a grant of summary judgment, "[w]e may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal. Thus, unless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create 'triable issues of material fact' may not be raised or considered on appeal." (*Sangster v. Paetkau, supra,* 68 Cal.App.4th at p. 163; see also *Sacks v. FSR Brokerage, Inc.* (1992) 7 Cal.App.4th 950, 962-963 [9 Cal.Rptr.2d 306].)

## Dual Capacity Exception Not applicable

 Appellants first argue that the trial court erred in concluding that their complaint was barred by a 1982 amendment to section 3602 limiting the so-called dual capacity exception upon which they rely to circumvent the exclusivity of the workers' compensation remedy. They contend that because the decedent was allegedly exposed to asbestos during his employment with respondent's predecessor between 1964 and 1966, the 1982 amendment is inapplicable to their case. Appellants are wrong.

Where the "conditions of compensation concur," the California workers' compensation law provides the *exclusive* remedy in this state for the recovery of compensation, from either the employer or any other employee of the employer acting within the scope of employment, for the injury or death of an employee "arising out of and in the course of the employment." (§§ 3600, 3601, 3602; *Privette v. Superior Court* (1993) 5 Cal.4th 689, 697 [21 Cal.Rptr.2d 72, 854 P.2d 721]; *Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 468 [165 Cal.Rptr. 858, 612 P.2d 948, 9 A.L.R.4th 758]; 2 Witkin, Summary of Cal. Law (9th ed. 1987) Workers' Compensation, §§ 25-28, 184, pp. 578-582, 748-749.)[3] In an effort to avoid this statutory bar to their action, appellants have relied on a court-made exception to the general rule of exclusivity known as the dual capacity doctrine, first enunciated by the Supreme Court in *Duprey v. Shane* (1952) 39 Cal.2d 781 [249 P.2d 8].

[3]The "conditions of compensation" are set out in section 3600. Among other things, these include the following pertinent circumstances: (a) at the time of the injury, the employee was "performing services growing out of and incidental to his or her employment and [was] acting within the course of his or her employment; (b) the injury was "proximately caused by the employment, either with or without negligence"; (c) the injury was not caused by intoxication, alcohol or the unlawful use of controlled substances on the part of the injured employee; (d) the injury or death was not "intentionally self-inflicted"; (e) the injury did not arise out of "an altercation in which the injured employee [was] the initial physical aggressor"; and (f) the injury was not caused by the injured employee's commission of a crime for which he or she has been convicted. (§ 3600, subd. (a).)

██ Under the common law dual capacity doctrine, when an employee is injured in the course of a relationship with his or her employer that is conceptually distinct from that of employer and employee, or while the employer is acting in a legal capacity toward the employee distinct from that of employer, the employee may bring a civil action and recover damages at law for breach of the employer's duties arising from that distinct relationship or legal capacity, notwithstanding the general exclusivity of the workers' compensation remedy. (*Duprey v. Shane, supra,* 39 Cal.2d at pp. 785, 793; see also *Bell v. Industrial Vangas, Inc.* (1981) 30 Cal.3d 268, 277-279 [179 Cal.Rptr. 30, 637 P.2d 266]; *D'Angona v. County of Los Angeles* (1980) 27 Cal.3d 661, 663-668 [166 Cal.Rptr. 177, 613 P.2d 238]; *Moreno v. Leslie's Pool Mart* (1980) 110 Cal.App.3d 179, 182 [167 Cal.Rptr. 747, 9 A.L.R.4th 869]; *Douglas v. E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103, 113 [137 Cal.Rptr. 797].) ██ Thus, in their first amended complaint, appellants alleged that in manufacturing asbestos-containing products, respondent "undertook a set of obligations distinct and separate from its status as employer and, therefore, [owed] the same duties to [appellants] as to the public at large." Appellants specifically alleged that the decedent "was a foreseeable user [of these asbestos-containing products] and his exposure to the end and/or finished product was the same as any consumer's exposure. Further, the process used to make [the subject products and] materials generated unsafe levels of asbestos dust, thereby exposing [the decedent] as the user to the same harmful dust as were those users employed by the asbestos manufacturing plants to which [respondent] and its predecessor companies, licensed its patents." In making these factual allegations, appellants attempted to establish that respondent had assumed a second, separate legal capacity with respect to the decedent, conceptually distinct from that of employer, which imposed on respondent obligations independent of those imposed on it as the decedent's employer. In so doing, appellants sought to rely on the common law dual capacity doctrine exception to the exclusivity of the workers' compensation remedy.

However, in 1982, the Legislature amended section 3602 to limit the former dual capacity exception to workers' compensation exclusivity. Section 3602, as amended in 1982, now provides that an employee, or his or her dependents in the event of the employee's death, may bring an action at law for damages against the employer, despite the existence of the workers' compensation remedy, "[w]here the employee's injury or death is proximately caused by a defective product manufactured by the employer *and sold, leased, or otherwise transferred for valuable consideration to an independent third person, and that product is thereafter provided for the employee's use by a third person.*" (§ 3602, subd. (b)(3), added by Stats. 1982, ch. 922, § 6, p. 3367, italics added.)

Thus, since 1982, the dual capacity exception to the general exclusivity of the workers' compensation remedy has been limited to the narrow factual circumstances presented where the employee's injury was caused by the employer's product, which itself was provided to the employee not by the employer, but by an *independent third person* who obtained the product from the employer for valuable consideration. Significantly, appellants do not contend that their case comes within this narrower scope of the dual capacity exception as it currently exists since the Legislature's 1982 amendment to section 3602. Instead, they argue that the decedent's action accrued at the time of his alleged exposure to asbestos during his employment with respondent's predecessors between 1964 and 1966, and appellants' lawsuit is therefore unaffected by the 1982 change in the law.

In analyzing appellants' claim, we begin by accepting the premise that the 1982 amendment to section 3602 applies prospectively only, and does "not apply to an action in which the events giving rise to it occurred prior to the effective date of the amendment." (*Perry v. Heavenly Valley* (1985) 163 Cal.App.3d 495, 504-506 [209 Cal.Rptr. 771].) ■ There is a well-established presumption that, in the absence of some clear indication of legislative intent to the contrary, enactments, amendments or other changes in the law are applied prospectively only. (*United States v. Security Industrial Bank* (1982) 459 U.S. 70, 79-80 [103 S.Ct. 407, 412-413, 74 L.Ed.2d 235]; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507]; *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434]; *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 827 [258 Cal.Rptr. 161, 771 P.2d 1247]; *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1193-1194, 1206-1209 [246 Cal.Rptr. 629, 753 P.2d 585].) ■ Because the Legislature made no express indication that the 1982 amendment to section 3602 was intended to apply retroactively, the issue is whether or not that amendment applies *prospectively* to appellants' action in this case.

The answer to this question depends on the date of the decedent's *injury* as a matter of law. Appellants cite the Supreme Court's opinion in *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520 [66 Cal.Rptr.2d 438, 941 P.2d 71] (*Buttram*) to the effect that "a cause of action may be viewed in the eyes of the law as 'accruing' for different purposes on different dates, depending on the purpose for which the accrual determination is being sought." *Buttram* described "a continuum of triggering events" which could be used to establish the date on which a cause of action for personal injuries arising from a latent disease has accrued, starting with initial exposure to the toxic substance and ending with the first appearance of symptoms, medical diagnosis and the injured person's actual or constructive knowledge of the

presence of disease. (*Id.* at p. 530.)[4] Relying on this "continuum," appellants contend that for purposes of determining whether the 1982 amendment to section 3602 is applicable to their case, the decedent's cause of action should be deemed to have accrued at the time of his original exposure to asbestos during his employment with Ameron's predecessor companies between 1964 and 1966.[5]

Appellants' position is contrary to the controlling law on this subject. In *Buttram* itself, the issue before the Supreme Court was the correct accrual date for determining the prospective application of Proposition 51, which in 1986 changed the existing common law by limiting a tortfeasor's liability for noneconomic damages to the proportion of such damages equal to the tortfeasor's own percentage of fault. For this purpose, the Supreme Court held that a cause of action for damages arising from latent and progressive asbestos-related mesothelioma accrued, *not* when the plaintiff was first exposed to asbestos or first suffered some undiscovered and unmanifested disease but, instead, at the time the disease for which damages were sought was *diagnosed or otherwise discovered.* (*Buttram, supra,* 16 Cal.4th at pp. 525, 531, 540.)

Perhaps more relevant to the facts of this case are the statutory standards for determining when a workers' compensation claim accrues. Under section 5400, no claim to recover compensation may be maintained unless the employer is served with written notice of injury or death within 30 days after "the occurrence of the *injury* which is claimed to have caused the disability or death," except where the employer already has actual or constructive knowledge of an employee's injury. (Italics added.) Although in most cases the date of the "injury" is that on which the alleged incident or exposure

---

[4]"Analytically, one could posit a continuum of triggering events which, from a medical or legal standpoint, might be used to establish the date on which a cause of action for personal injuries arising from a latent disease has 'accrued,' beginning with initial exposure to the toxic substance and proceeding through the inception of undetected physical changes (i.e., 'subclinical' or 'cellular' changes), the first appearance of symptoms, medical diagnosis (which may come before or after the onset of symptomatology), and the occurrence of certain legally significant events (i.e., actual or constructive knowledge of the onset of disease). For purposes of resolving the issue in this case, however, it is important to note that such a cause of action may be viewed in the eyes of the law as 'accruing' for different purposes on different dates, depending on the purpose for which the accrual determination is being sought." (*Buttram, supra,* 16 Cal.4th at p. 530.)

[5]Relying on the cited language from the Supreme Court's opinion in *Buttram*, appellants argue that the date a cause of action "accrues" may vary, depending on the purpose for which the accrual date is used. Specifically distinguishing the two purposes of determining (a) whether the 1982 amendment to section 3602 applies to this case, and (b) whether the statute of limitations on their action has run, appellants contend that, at least for the limited purposes of the statute of limitations, their cause of action did not accrue until the time of the decedent's diagnosis or his death.

occurred, "[t]he date of injury *in cases of occupational diseases or cumulative injuries* is that date upon which the employee *first suffered disability* there-from *and either knew, or in the exercise of reasonable diligence should have known*, that such disability was caused by his present or prior employment." (§§ 5412, 5411, italics added; *Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1990) 219 Cal.App.3d 1265, 1271-1273 [268 Cal.Rptr. 699].)

Thus, like the Supreme Court in *Buttram*, the act of which section 3602 itself is a part defines "the date of injury" when a claim based on a latent disease such as asbestosis "accrues" as that date on which the employee first learned of or *discovered* his or her disability or disease. This is actually no different from the test for determining accrual of causes of action for latent injuries in civil cases. These do not accrue "until the plaintiff discovers or reasonably should have discovered that he [or she] has suffered a compensable injury." (*Buttram, supra,* 16 Cal.4th at p. 530.) Therefore, the appropriate test for determining when appellants' causes of action for the decedent's asbestos-related latent injuries, disease and death *accrued* for purposes of establishing whether the 1982 amendment to section 3602 can fairly be applied prospectively to appellants' case, is by the date on which the decedent was first diagnosed with the asbestos-related disease for which damages are being sought, or when he otherwise first discovered that he had the disease. If and only if appellant first learned he was suffering from an asbestos-related illness *prior to* the 1982 effective date of the amendment to section 3602, may appellants base their claim on the former dual capacity doctrine in effect before that amendment.

The undisputed record, as demonstrated by appellants' deposition testimony and responses to interrogatories, shows that decedent Smith first visited a doctor because of his asbestos-related illness in July 1993; he first "became disabled" on January 18, 1994; and he was actually diagnosed as suffering from an asbestos-related disease on February 21, 1994. In short, the *undisputed* evidence is that it was not until 1993 *at the very earliest* that appellant first suffered the disability for which appellants make their claim. Clearly, these triggering events all occurred well *after* the effective date of the 1982 amendment to section 3602. There is thus no triable issue of fact as to the question whether section 3602, subdivision (b)(3), as amended in 1982, applies to appellants' action. Because appellants have never asserted that any of their causes of action do come within that provision, the workers' compensation law is the appellants' sole and exclusive remedy against respondent for the decedent's injuries and death.[6] The trial court did not err in granting summary judgment on this ground.

---

[6]Even if appellants had so argued, the undisputed evidence establishes beyond question that appellants' claims do not come within the statutory exception set out in section 3602,

### Fraudulent Concealment Exception Not Applicable

█ In the alternative, appellants argue that the trial court erred in granting summary judgment because there is a triable issue of fact as to whether their case comes within the fraudulent concealment exception to the general rule of workers' compensation remedy exclusivity, as set out in section 3602, subdivision (b)(2). Specifically, they contend there is evidence the decedent's asbestos-related injury was aggravated by respondent's fraudulent concealment of the existence of that injury and its connection with the decedent's previous employment at Ameron's predecessor companies. On this basis, appellants urge the trial court should have permitted trial to go forward on this theory of liability. Appellants' contention is meritless.

Under section 3602, subdivision (b)(2), an employee, or his or her dependents in the event of his or her death, may bring an action at law for damages against the employer as if the workers' compensation remedy did not apply, "[w]here the employee's injury is aggravated by the employer's *fraudulent concealment of the existence of the injury and its connection with the employment*, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation. The burden of proof respecting apportionment of damages between the injury and any subsequent aggravation thereof is upon the employer." (Italics added.) This provision,

---

subdivision (b)(3), as amended in 1982. That provision requires that the employee's injury or death have been proximately caused by a defective product manufactured by the employer, which product was sold, leased, or otherwise transferred for valuable consideration to an independent third party and thereafter provided for the employee's use by a third person. Appellants' own evidence shows that the decedent's employment with respondent's predecessor companies involved his inspection of pipes during the manufacturing process, *before* they were actually sold and delivered to consumers or any other third parties.

For much the same reason, even if appellants were able to establish that their causes of action accrued prior to the amendment of section 3602 in 1982, they still would not be able to establish that the facts of this case would have come within the dual capacity exception as it existed prior to 1982. The common law dual capacity doctrine was only applicable to situations where the injured employee was *using* a product manufactured by the employer for sale to the general public in a manner in which the general public could have been expected to use that product. It did not apply where the product in question was in an unfinished state or required further processing before becoming available for distribution to the public. (*Bell v. Industrial Vangas, Inc., supra,* 30 Cal.3d at pp. 278-279; *Blew v. Horner* (1986) 187 Cal.App.3d 1380, 1391 [232 Cal.Rptr. 660]; *Bibby v. Central Industrial Engineering Co., Inc.* (1984) 153 Cal.App.3d 871, 875-877 [200 Cal.Rptr. 412]; *Franco v. United Wholesale Lumber Co.* (1983) 148 Cal.App.3d 981, 983 [196 Cal.Rptr. 430].)

Here, all of appellants' evidence shows the decedent was only exposed to asbestos in the course of his employer's *manufacturing* of the asbestos-containing products, *not* while he was *using* them himself in the same manner in which a member of the general public would have used them. Because there is *no evidence* the decedent was injured by the same risk to which a consumer using these products would have been exposed, the common law dual capacity exception to the exclusivity of the workers' compensation remedy simply does not apply to this case.

enacted as part of the 1982 amendment to section 3602, codifies the common law fraudulent concealment exception to the exclusivity of the workers' compensation remedy, as enunciated by the Supreme Court in *Johns-Manville Products Corp. v. Superior Court, supra,* 27 Cal.3d at pages 468-469.

An employer's actual knowledge of the existence of an employee's injury connected with the employment is a necessary prerequisite to establishing a claim against the employer for fraudulent concealment under section 3602, subdivision (b)(2). Clearly, an employer cannot be charged with concealing something of which it has no knowledge. (*Foster v. Xerox Corp.* (1985) 40 Cal.3d 306, 312 [219 Cal.Rptr. 485, 707 P.2d 858]; *Santiago v. Firestone Tire & Rubber Co.* (1990) 224 Cal.App.3d 1318, 1331, 1335 [274 Cal.Rptr. 576].) In addition, the injured employee or his or her representatives must present evidence showing that the employer actively prevented the employee from receiving treatment for his or her employment-related injury or disease, or otherwise "aggravated" the injury or disease in some way. (*Hughes Aircraft Co. v. Superior Court* (1996) 44 Cal.App.4th 1790, 1794 [52 Cal.Rptr.2d 514].)

None of these essential elements of the fraudulent concealment exception can be found in this case. In support of the applicability of the exception, appellants cite evidence from respondent's interrogatory responses that respondent first became positively aware that there was an association between asbestos exposure and disease in October 1975; as early as 1972, respondent had made available to its customers written warnings of the possible health hazards of exposure to asbestos; in the mid-1970's respondent began warning its employees orally that asbestos could be hazardous and they should wear safety equipment; and respondent never issued any written policy discontinuing such warnings to its employees. Contrary to appellants' assertions, *none* of this evidence remotely suggests or raises a reasonable inference that at the time of the decedent's employment, Ameron or its predecessors knew of the decedent's asbestos-related injuries, fraudulently concealed from the decedent the existence of such injuries and their connection with his employment, or in any way hindered him from seeking treatment or bringing a lawsuit.

In fact, the evidence in the record indicates the very opposite. Thus, as of the late 1970's, decedent Smith was fully aware of his exposure to asbestos during his employment at respondent's predecessor companies, and told his family about this. Appellant Ashdown specifically testified that she had been informed by the decedent "in the late '70s" that he had previously worked with asbestos in one of Ameron's predecessor companies manufacturing pipe between 1964 and 1966; during his employment "he could see asbestos

in the air"; and "workers were given masks to wear, but they didn't always wear them." Ashdown also testified that after the decedent was diagnosed as having an asbestos-related disease in 1994, they again discussed his exposure to asbestos during his previous employment with respondent. Significantly, they *never* discussed any *other* possible source of exposure to asbestos aside from his employment with respondent's predecessor.

Thus, appellants cannot reasonably claim respondent fraudulently concealed the existence of the decedent's injury or its potential connection with his employment, much less that respondent hindered appellants in any way from obtaining treatment for the decedent, or bringing an action against respondent based upon his alleged exposure to asbestos during his employment. Indeed, there simply is *no evidence* respondent or its predecessor companies *ever knew* the decedent had an asbestos-related disease. On the basis of this record, the trial court correctly determined that appellants failed to offer any evidence creating a triable issue of fact as to whether respondent actually knew at any time of the existence of the decedent's asbestos-related disease, fraudulently concealed the existence of that disease, prevented the decedent from receiving treatment, or by any conduct aggravated his disability. There was no error in granting summary judgment on this basis.

TIMING OF HEARING ON SUMMARY JUDGMENT MOTION*

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION·

The judgment is affirmed. Appellants shall pay respondent's costs on appeal.

Corrigan, J., and Walker, J., concurred.

---

*See footnote, *ante*, page 868