Filed 2/17/26  Cadena v. City of San Diego CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| ALINA CADENA et al., | D084784 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2019-00032076-CU-MC-CTL) |
| CITY OF SAN DIEGO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel and Katherine A. Bacal, Judges.  Affirmed.

Aguirre & Severson, Michael J. Aguirre and Maria C. Severson for Plaintiffs and Appellants.

Heather Ferbert, City Attorney, M. Travis Phelps, Assistant City Attorney, Shawn M. Robinson, Deputy City Attorney; Hugo Parker, James C. Parker, and Bina Ghanaat for Defendants and Respondents.

Employees of the City of San Diego (the City) sued the City and a City official for injuries they allegedly suffered from exposure to asbestos in the workplace.  The trial court granted the City's motion for summary judgment

on the ground that workers' compensation was the employees' exclusive remedy. The employees contend their action falls within an exception to the exclusivity rule for cases in which the employer has aggravated the employees' injuries by fraudulently concealing the existence of the injuries and their connection to employment. The employees also contend their claim for emotional distress damages falls outside the workers' compensation scheme, and they presented sufficient evidence to support their claim for punitive damages against the City official. We affirm the judgment.

## I.

## BACKGROUND

### A.    *Underlying Facts*

The City leased several floors of a high-rise office building in downtown San Diego (the Building) where it stationed many of its employees in 2017. The City knew the Building contained asbestos. In July 2017, the City sent its employees an e-mail notifying them the Building owner would be replacing all exterior windows. The e-mail stated a comprehensive study had been done to identify the locations of asbestos in the Building; the locations included window channels on floors leased by the City; and daily monitoring of air quality in locations where renovations would affect asbestos-containing materials would be done. An estimated 40 tons of asbestos-containing materials would be removed during the renovations. The City designated Karen Johnson, a manager in its Real Estate Asset Department, as the liaison between City employees working at the Building and the Building owners and renovation contractors.

Within days of the City's e-mail notice about the window renovation project, Johnson received an e-mail on behalf of employees expressing concerns about exposure to asbestos. Over the next several months, she and

2

other City officials received e-mails from employees reporting that: (1) they were experiencing itchy and watery eyes and respiratory problems, including difficulty breathing, runny noses, itchy and burning throats, and coughing; (2) renovation workers were wearing protective masks because asbestos was being released during the renovations; (3) plastic barriers intended to prevent renovation-related dust and debris from entering employees' workspaces were ineffective; and (4) a ventilator for a sealed area that contained asbestos was blowing exhaust into the structure where employees parked. Johnson relayed the complaints to the Building's owner, the contractors doing the window renovations, and the City's deputy chief operating officer, Ronald Villa. Despite employees' repeated complaints, the City decided not to move them out of the Building because at the time the City had no legal grounds to terminate the lease and had no other place to which to move them.

That decision changed after the San Diego County Air Pollution Control District (the District) received a complaint about debris and dust in the lobby and on several floors of the Building on January 25, 2018. The District took samples from several floors and tested them for asbestos. The tests came back positive the following day. On January 26, 2018, the City notified employees working in the Building of the test results and instructed them to stay out of the Building until further notice. Many employees were temporarily relocated to another building the City knew contained asbestos.

Over the next three weeks, the District confirmed there was asbestos contamination throughout the Building. On February 9, 2018, the District received reports from the City that air samples collected between February 1 and 5 contained asbestos fibers in amounts that exceeded permissible levels. On February 9, 10, 11, and 17, the District collected from various locations samples of debris that tested positive for asbestos. On February 21, the

3

District petitioned its hearing board for an abatement order prohibiting the Building owner from continuing the window renovation project until it complied with all legal requirements regarding asbestos removal.

On March 2, 2018, City officials held a meeting with employees who had worked in the Building. Villa told employees the asbestos discovered in the Building on January 25 "was not airborne," and the results of prior tests of air samples conducted by the Building owners at the City's request were "within tolerable levels" under standards set by the federal Environmental Protection Agency (EPA). George Katsikaris, a representative of the City's Environmental Services Department, told City employees that before they were instructed to leave the Building, the City had taken "a huge amount of [air] samples" and, "with the exception of a couple of areas that [were] still under containment," "[e]verything was within tolerable levels, breathable air levels that would be just as safe for a hospital or a school." He also said that "quite a few samples" of dust had been collected and "they all came back clean." A toxicologist with more than 30 years of experience with asbestos-related diseases told the employees they should not worry they were at risk of adverse health effects from asbestos exposure. Nevertheless, Villa told employees that if they had concerns they were "exposed to asbestos and [were] going to get cancer," the City was not going to try to convince them otherwise, and they should "do what [they] need to do to take care of that." A workers' compensation manager advised employees how to file workers' compensation claims.

B. *Legal Proceedings*

1. *Pleadings*

Alina Cadena and other City employees who worked in the Building during the window renovations (collectively Employees) sued the City and

Villa in his official capacity (sometimes collectively the City) for injuries they allegedly suffered as a result of exposure to asbestos in the Building. In the operative third amended complaint, Employees alleged the City intentionally exposed them to asbestos and concealed the extent of the exposure because it decided Employees' "health and safety [were] not worth the cost of breaking the City's lease for the [Building]." Employees alleged their exposure to asbestos put them at increased risk of developing certain diseases, including cancers, for which they will require medical monitoring for the rest of their lives. They claimed the exposure caused them genuinely and reasonably to fear developing such diseases. Employees asserted counts for intentional infliction of emotional distress and fraudulent concealment, and prayed for compensatory damages, costs, and attorney fees. They also prayed for punitive damages against Villa.

The City filed an answer in which it generally denied the allegations of the third amended complaint and asserted several affirmative defenses. One defense was that the Workers' Compensation Act (Lab. Code, § 3200 et seq.) provided the exclusive remedy for Employees' alleged injuries.

2. *Discovery*

The parties conducted discovery during which the following documents, among others, were produced:

- A July 14, 2017 e-mail from the City for distribution to employees who worked in the Building advising that the window renovation project would involve removal of asbestos-containing materials, air levels of asbestos would be monitored daily, and asbestos abatement activities would be monitored by a state agency.

- Several e-mails from July 2017 through January 2018 in which employees reported to Johnson and other City officials that they were

5

experiencing respiratory symptoms and had concerns about dust, debris, and potential exposure to asbestos during the window renovation project.

- The District's notice of violation to the Building owner for failing properly to remove, contain, and dispose of asbestos-containing materials on January 25 and 26, 2018.

- The City's January 26, 2018 e-mail notifying employees that on that day it had received information from the District that debris testing positive for asbestos had been found in the Building and instructing them to stay out.

- The District's February 21, 2018 petition against the Building owner for an abatement order concerning asbestos-disturbing renovations, which described the discovery of asbestos in debris and air samples between January 25 and February 17.

The parties deposed witnesses, whose testimony included the following:

- The manager of the window renovation project at the Building (Lawrence Howard) testified that beginning in August 2017 air samples were regularly taken and tested for asbestos, and it was not until February 2018 that any samples tested above EPA-recommended levels.

- A representative of the laboratory that tested the air samples (Glenn Montague) testified those collected between February 2 and 5, 2018, contained asbestos above recommended levels, and he had no information the City was aware of such levels before February 2.

- A civil actions investigator for the District (Heidi Gabriel-Pack) testified "the first time [the District] had evidence that there was loose

asbestos of a concerning nature in the [B]uilding" was on January 25, 2018.

- Villa and Katsikaris both testified that was the date on which the City first became aware debris had been discovered in the Building that tested positive for asbestos the following day.

- Employees testified they had no evidence the City was aware before January 26, 2018, that loose debris in the Building contained asbestos.

3. *Motion for summary judgment*

The City filed a motion for summary judgment on the ground that workers' compensation provided the exclusive remedy for Employees' alleged injuries (Lab. Code, § 3602, subd. (a)) and Employees had no evidence to establish the fraudulent concealment exception to exclusivity (*id.*, subd. (b)(2)). Alternatively, the City moved for summary adjudication of Employees' claim for intentional infliction of emotional distress, on the ground Employees could not establish essential elements of the claim, and of their claim for punitive damages against Villa, on the ground they had no clear and convincing evidence he acted with fraud, oppression, or malice (Civ. Code, § 3294). In support of the motion, the City submitted declarations from Johnson and Villa, who stated that nobody at the City was made aware of loose or uncontrolled asbestos at the Building before January 26, 2018, and that Howard regularly reported air samples collected during the window renovation project never tested above normal background levels for asbestos. The City also submitted declarations from counsel that attached excerpts of deposition transcripts and other documents.

In opposition to the motion for summary judgment, Employees contended workers' compensation was not their exclusive remedy. They argued there were triable issues of fact on whether the claim for intentional

7

infliction of emotional distress fell outside the workers' compensation scheme because the working conditions that exposed them to asbestos were not a normal part of the employment relationship. Employees argued there were triable issues of fact on the applicability of the exception to the workers' compensation exclusivity rule for cases in which the employer aggravated employees' injuries by fraudulently concealing the existence of the injuries and the connection between the injuries and employment. Employees argued they had presented enough evidence to require a jury trial on whether Villa was liable for punitive damages for acting with conscious disregard of their safety.

With their opposition papers, Employees submitted many documents, including copies of the District's notice of violation and petition for abatement; e-mails from employees to Johnson and other City officials about environmental conditions and related respiratory problems during the window renovation project at the Building; excerpts of the transcript of the March 2, 2018 meeting between City officials and employees; excerpts of deposition transcripts; and declarations from several Employees describing environmental conditions and related respiratory problems during the window renovation project at the Building and their concerns about exposure to asbestos. Employees also filed objections to the declarations of Johnson and Villa that the City had submitted in support of the summary judgment motion. Employees objected on grounds of lack of personal knowledge and hearsay to the statements that (1) before January 26, 2018, nobody at the City was made aware there was loose asbestos debris at the Building and (2) Howard had made certain reports about asbestos air levels.

The trial court held a hearing on the City's motion for summary judgment. The court sustained Employees' objections to the declarations of

8

Johnson and Villa "to the extent the declarations' statements concern knowledge of third parties (i.e., 'anyone else at the City')."[1]  The court went on to consider whether workers' compensation was the exclusive remedy for Employees' alleged injuries.  In the court's view, it was undisputed that Employees were employed by the City and were claiming injuries incurred in the course of their employment, and the issue was whether the fraudulent concealment exception to the workers' compensation exclusivity rule applied.  The court ruled the City met its initial burden by submitting evidence showing "the lack of prior actual notice of loose or airborne asbestos [in the Building] and that upon receipt of the notice [the City] ordered employees to leave the Building."  The court further ruled Employees did not meet their burden to submit evidence raising a triable issue of material fact about the City's "actual knowledge that there was airborne asbestos present or [Employees'] complaints of respiratory issues were caused by such asbestos."  The court therefore ruled the fraudulent concealment exception did not apply, workers' compensation was Employees' exclusive remedy, and the City was entitled to judgment as a matter of law.  Based on its rulings, the court entered judgment against Employees and in favor of the City.

## II.

## DISCUSSION

Employees raise three claims of error as to the trial court's ruling on the summary judgment motion.  First, they contend there are triable issues

---

[1]     Employees falsely claim the trial court "did not expressly rule on the objections" to Johnson's and Villa's declarations.  Aside from asserting the court "should not have relied on the declarations before ruling on the objections," they do not challenge the admissibility of the declarations in their opening brief.  We deem any such challenge forfeited.  (*Gray v. La Salle Bank, N.A.* (2023) 95 Cal.App.5th 932, 969, fn. 22.)

of fact on whether the fraudulent concealment exception to the workers' compensation exclusivity rule applies. Second, Employees contend workers' compensation is not the exclusive remedy for their claim of intentional infliction of emotional distress because the conduct underlying the claim was not a normal part of the employment relationship. Third, they contend the claim for punitive damages against Villa should not have been dismissed because there are triable issues of fact as to whether he engaged in despicable conduct with conscious disregard to their safety. After setting forth the applicable standard of review, we shall consider each claim of error in turn.

A.     *Standard of Review*

We review a summary judgment de novo. (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39; *Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1083.) A defendant's motion for summary judgment is properly granted if the papers submitted show there is no triable issue of material fact on the plaintiff's claim and the defendant is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subds. (a)(1), (c); *Whitmire*, at p. 1083.) The defendant may satisfy its initial burden by submitting evidence showing the plaintiff cannot establish an essential element of her claim or the defendant has a complete defense thereto. (Code Civ. Proc., § 437c, subd. (p)(2); *Whitmire*, at p. 1083.) If the defendant does so, the burden shifts to the plaintiff to submit evidence raising a triable issue of material fact on the targeted element of her claim or on the asserted defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Whitmire*, at p. 1083.) In reviewing the ruling on the motion, we consider all the evidence in the moving and opposing papers (except that to which objections were properly sustained) and all the reasonable inferences therefrom, and we view the evidence in the light most

10

favorable to the plaintiff. (Code Civ. Proc., § 437c, subd. (c); *Murphy v. City of Petaluma* (2024) 106 Cal.App.5th 1263, 1269, fn. 6; *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 90.) We must affirm the summary judgment if it is correct on any ground asserted in the motion. (*Harding v. Lifetime Financial, Inc.* (2025) 109 Cal.App.5th 753, 760.)

B.     *Fraudulent Concealment*

Employees' primary argument is that there are triable issues of material fact as to the applicability of the fraudulent concealment exception to the workers' compensation exclusivity rule. Generally, when an employee suffers an injury "arising out of and in the course of the employment," workers' compensation is the employee's "sole and exclusive remedy" against the employer. (Lab. Code, §§ 3600, subd. (a), 3602, subd. (a); see *Charles J. Vacanti, M.D., Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 812–813 (*Vacanti*).) An exception to the exclusivity rule allows an employee to file "an action at law for damages . . . [w]here the employee's injury is aggravated by the employer's fraudulent concealment of the existence of the injury and its connection with the employment, in which case the employer's liability shall be limited to those damages proximately caused by the aggravation." (Lab. Code, § 3602, subd. (b)(2).) To recover under this exception, the employee must prove: (1) the employer knew of the employee's work-related injury; (2) the employer concealed its knowledge from the employee; and (3) the concealment aggravated the injury. (*Chavez v. Alco Harvesting, LLC.* (2024) 102 Cal.App.5th 866, 871 (*Chavez*); *Silas v. Arden* (2012) 213 Cal.App.4th 75, 91 (*Silas*).) If any one of the elements is not satisfied, the exception does not apply, and the employer is entitled to a judgment in its favor. (*Jimenez v. Mrs. Gooch's Natural Food Markets, Inc.* (2023) 95 Cal.App.5th 645, 658

11

(*Jimenez*); *Silas*, at p. 91.) As we shall explain, Employees failed to raise a triable issue of material fact as to the first element.

To establish fraudulent concealment under Labor Code section 3602, subdivision (b)(2), the employee must prove the employer had actual prior knowledge of the employee's work-related injury. (*Ashdown v. Ameron Internat. Corp.* (2000) 83 Cal.App.4th 868, 880 (*Ashdown*); *Hughes Aircraft Co. v. Superior Court* (1996) 44 Cal.App.4th 1790, 1797 (*Hughes Aircraft*).) In support of the summary judgment motion, the City submitted evidence it had no such knowledge. Johnson and Villa, the City officials who communicated with employees about the window renovation project and the discovery of loose asbestos-containing debris in the Building, stated in declarations that they were not made aware of any such debris until January 26, 2018, and had received no reports of elevated levels of asbestos in the air. The District's civil actions investigator testified at a deposition that the District had no evidence there was any loose asbestos in the Building before discovery of the debris that tested positive for asbestos on that date. The window renovation project manager testified at a deposition that air samples regularly collected at the Building during the project did not test above EPA-recommended levels for asbestos until February 2018. Employees admitted at depositions that they had no evidence the City knew before January 26, 2018, that there was loose asbestos-containing debris in the Building. On that date, the City notified Employees it received information from the District that debris tested positive for asbestos and instructed them to stay out of the Building until further notice. This evidence showed the City did not actually know before its employees did that there was asbestos to which employees even might have been exposed, and therefore it could not have had actual prior knowledge of any employee injury from such exposure.

12

Employees identify no evidence they suffered asbestos-related injuries before January 26, 2018, or the City had actual knowledge of any such injuries before they did. Instead, they contend, without citing any authority, that "knowledge of injury-causing circumstances is sufficient under California law." Employees argue the City's knowledge they were being exposed to dangerous levels of asbestos reasonably may be inferred from evidence the City knew approximately 40 tons of asbestos-containing materials would be removed from the Building during the window renovation project, that some of the materials were in places where City employees worked, that renovation workers were seen wearing respirators and masks, and that many City employees complained the renovations created excessive dust and debris that caused them to cough and have other respiratory symptoms. We disagree.

Neither constructive knowledge nor imputed knowledge of employee injury suffices for employer liability under Labor Code section 3602, subdivision (b)(2). (*Chavez, supra*, 102 Cal.App.5th at p. 871; *Hughes Aircraft, supra*, 44 Cal.App.4th at p. 1796.) The City's "prior knowledge of its unsafe work environment and the potential risks to its employees, even if it could be proven, would be insufficient to establish section 3602, subdivision (b)(2) liability. . . . It is not enough for [Employees] to rely on evidence from which a trier of fact might conclude [the City] should have known of their injuries before they were reported; only evidence of actual knowledge would raise an issue of fact precluding the grant of summary judgment." (*Hughes Aircraft*, at p. 1797.) Even if an employer's knowledge of risks in an unsafe workplace sufficed to establish knowledge of injury to an employee, the City did not have the required *prior* knowledge. Before the window renovation project began, the City notified employees in the Building that asbestos-

13

containing materials would be removed from floors leased by the City. During the project, several City employees reported renovation workers were wearing respirators and masks, and dust and debris were causing respiratory problems. Employees thus had the same information from which they insist the City derived knowledge of their asbestos-related injuries. The fraudulent concealment "exception does not apply where the employee was aware of the injury at all times." (*Silas, supra*, 213 Cal.App.4th at p. 91; see *Jensen v. Amgen Inc.* (2003) 105 Cal.App.4th 1322, 1326 [employer lacked actual prior knowledge required by Lab. Code, § 3602, subd. (b)(2) when employee knew of her symptoms before employer did].)

Employees next argue that in ruling they did not raise a triable issue of material fact as to the City's knowledge of their injuries, the trial court "misunderstood" the nature of their claim. They say the "ruling is based on the false premise that the claim was an actual asbestos cancer case, rather than a fear of cancer case." According to Employees, their fear of cancer claim "does not require [the City] to have knowledge of a connection between [their] symptoms and asbestos, as the ruling assumed." We are not persuaded.

Employees' failure to cite any supporting legal authority permits us to treat the argument as forfeited and to pass it without consideration. (E.g., *G.F. Galaxy Corp. v. Johnson* (2024) 100 Cal.App.5th 542, 550, fn. 4.) We nevertheless briefly address the argument on the merits and reject it. Nothing in the trial court's order granting the summary judgment motion suggests the court "misunderstood" the nature of Employees' claim. The court mentioned neither cancer nor fear of cancer, and instead considered the City's "notice of any asbestos[-]related injuries." That reference encompassed Employees' fear of cancer, which in the operative complaint they alleged was

14

caused by "toxic asbestos exposure" in the Building. Nor did the trial court erroneously assume their claim required the City know of a connection between their symptoms and exposure to asbestos. The fraudulent concealment exception to the workers' compensation exclusivity rule requires "fraudulent concealment of the existence of the injury *and its connection with the employment*." (Lab. Code, § 3602, subd. (b)(2), italics added.) The employer must have actual knowledge of the employee's *work-related* injury. (*Silas, supra*, 213 Cal.App.4th at p. 91; *Ashdown, supra*, 83 Cal.App.4th at p. 880.) Since the injury Employees alleged was fear of cancer based on exposure to asbestos in the workplace, the trial court properly considered the City's knowledge of that exposure in its ruling.

Employees lastly try to raise a triable issue of fact as to the City's knowledge of their injuries by pointing to discrepancies in what City officials told them about the location of the discovery of the asbestos-containing debris that led the City to instruct Employees to stay out of the Building. To avoid summary judgment, Employees had "to show that a triable issue of one or more *material facts* exists as to the cause of action or defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2), italics added.) "To be 'material' for purposes of a summary judgment proceeding, a fact must relate to some claim or defense in issue under the pleadings [citation], and it must also be essential to the judgment in some way [citation]." (*Kelly v. First Astri Corp.* (1999) 72 Cal.App.4th 462, 470.) Whether the asbestos-containing debris was discovered on a floor City employees never occupied, as Villa stated, or in a nonpublic area of a floor they occupied, as another City official stated, was not essential to the judgment. What mattered to the summary judgment motion was that the debris was discovered somewhere in the Building where Employees worked, and the City notified them of the discovery the same day

15

it learned the debris had tested positive for asbestos. Employees "may not defeat summary judgment by attempting to generate a factual dispute as to immaterial issues." (*Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1203.)

For the reasons discussed above, we conclude Employees "failed to establish any triable issues regarding [the City's] actual prior knowledge of their injuries" and "the trial court had no choice but to grant the summary judgment motion." (*Hughes Aircraft, supra*, 44 Cal.App.4th at p. 1797.) We therefore need not, and do not, consider Employees' related claims they raised triable issues of fact as to whether the City concealed knowledge of their injuries and thereby aggravated the injuries. (See *Jimenez, supra*, 95 Cal.App.5th at p. 658 [if any element of fraudulent concealment exception cannot be established, exception does not apply and employer is entitled to judgment]; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [if plaintiff cannot meet burden of proof on one essential element of claim, all other elements are rendered immaterial].)

C.     *Intentional Infliction of Emotional Distress*

Employees next argue workers' compensation is not the exclusive remedy for their claim of intentional infliction of emotional distress. As we noted earlier, the exclusive remedy provision applies to employee injuries "arising out of and in the course of the employment." (Lab. Code, §§ 3600, subd. (a), 3602, subd. (a).) Employees argue their emotional distress claim should go to a jury because the City's "conduct of knowingly exposing [them] to asbestos, a known carcinogen, and forcing them to work in an active construction zone where asbestos was being disturbed and removed cannot be considered a 'normal part of the employment relationship.' " We reject this argument as unsupported by controlling law.

16

Our Supreme Court has repeatedly held that workers' compensation was the exclusive remedy for an employee's claim against an employer for intentional infliction of emotional distress. (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 902 (*Miklosy*); *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 748 (*Livitsanos*); *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 25 (*Shoemaker*); *Cole v. Fair Oaks Fire Protection District* (1987) 43 Cal.3d 148, 160 (*Cole*).) "[T]he proposition that intentional or egregious employer conduct is necessarily outside the scope of the workers' compensation scheme is erroneous." (*Livitsanos*, at p. 752.) "If characterization of conduct normally occurring in the workplace as unfair or outrageous were sufficient to avoid the exclusive remedy provisions of the Labor Code, the exception would permit the employee to allege a cause of action in every case where he suffered mental disability merely by alleging an ulterior purpose of causing injury. Such an exception would be contrary to the compensation bargain[2] and unfair to the employer." (*Cole*, at p. 160.) When the basic conditions of workers' compensation exist, that is the exclusive remedy for an employee's emotional distress injuries except when

---

2    The exclusive remedy rule presumes a " 'compensation bargain' " between the employer and the employee. (*Shoemaker, supra* 52 Cal.3d at p. 16.) Under the bargain, the employer assumes liability for work-related injury regardless of fault in exchange for limitations on the amount the injured employee may recover, and the injured employee receives a relatively swift and sure payment of compensation without having to prove fault in exchange for giving up a potentially larger recovery in a civil action. (*Ibid.*)

the employer's conduct "contravenes fundamental public policy"[3] or "exceeds the risks inherent in the employment relationship." (*Livitsanos*, at p. 754; accord, *Miklosy*, at p. 902.) Employees correctly observe courts have held employers' intentional misconduct exceeded the risks of employment and permitted employees to recover in a tort action when the misconduct had "a 'questionable' relationship to the employment" or when "the employer[s] . . . stepped out of their proper roles." (*Cole*, at p. 161.) But no such circumstances are involved in this case.

The risk Employees would suffer an injury from an unsafe workplace was a risk inherent in their employment by the City. Every employer has a duty to provide "a place of employment that is safe and healthful for the employees therein." (Lab. Code, § 6400, subd. (a).) Breach of that duty is an expected part of the workers' compensation scheme (*Vuillemainroy v. American Rock & Asphalt, Inc.* (1999) 70 Cal.App.4th 1280, 1285–1286 (*Vuillemainroy*)), which "compensates employees for injuries arising out of unsafe conditions of the work place" (*Royster v. Montanez* (1982) 134 Cal.App.3d 362, 371). An injured employee obtains "relatively swift and certain compensation in return for the surrender of the right to bring tort actions for his employer's failure to provide a safe place of employment." (*Ibid.*) "Workers' compensation is the sole remedy for an employee injured by the employer's failure to provide a safe workplace." (*Spratley v. Winchell Donut House, Inc.* (1987) 188 Cal.App.3d 1408, 1412 (*Spratley*).) "The exclusivity rule applies even where the employer's misconduct is serious,

---

3    "The exception for conduct that 'contravenes fundamental public policy' is aimed at permitting a *Tameny* action [for wrongful discharge] to proceed despite the workers' compensation exclusive remedy rule." (*Miklosy, supra*, 44 Cal.4th at pp. 902–903; see *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178.) The exception is not at issue in this case.

willful or intentional; in such cases, Labor Code section 4553 dictates that the employee's recovery is increased by one-half." (*Vuillemainroy*, at p. 1283.)

The exclusivity rule applies to the emotional distress Employees allegedly suffered from fear they were exposed to asbestos in the Building. Our Supreme Court has held that if an employee sustains an injury because the "employer knew and concealed from him that his health was endangered by asbestos in the work environment, failed to supply adequate protective devices to avoid disease, and violated governmental regulations relating to dust levels at the [workplace], [the employee's] only remedy would be to prosecute his claim under the workers' compensation law." (*Johns-Manville Products Corp. v. Superior Court* (1980) 27 Cal.3d 465, 474–475 (*Johns-Manville*).) Following *Johns-Manville,* courts have held employees' injuries were within the course of employment when they resulted from employers' "reckless[ ] or deliberate[ ] fail[ure] to correct known safety violations" (*Vuillemainroy, supra*, 70 Cal.App.4th at p. 1286), "concealment of hazardous substances used in the employment" (*Gunnell v. Metrocolor Laboratories, Inc.* (2001) 92 Cal.App.4th 710, 722), concealment of the " 'high risk of injury or death resulting from exposure to asbestos or asbestos products " (*McDonald v. Superior Court* (1986) 180 Cal.App.3d 297, 300, 303 (*McDonald*)), or "knowing failure to assure a safe workplace" (*Spratley, supra*, 188 Cal.App.3d at p. 1414). In *Spratley*, we held the "mental pain and suffering and emotional distress" of an employee physically attacked at the workplace by a third party "arose out of and in the course of the employment relationship" even though the employer "fraudulently represented her workplace would be safe." (*Id.* at pp. 1410–1411, 1412.) Based on these cases, we hold the City's alleged misconduct in exposing Employees to asbestos in the Building did not "exceed[ ] the risks inherent in the employment relationship," and their

19

"emotional distress injuries are subsumed under the exclusive remedy provisions of workers' compensation." (*Livitsanos, supra*, 2 Cal.4th at p. 754.)

The cases Employees rely on do not persuade us to reach the opposite conclusion. In *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 723, the California Supreme Court held workers' compensation was not the exclusive remedy for an employer's false imprisonment of an employee because "such action cannot be said to be a normal aspect of the employment relationship" and "is always outside the scope of the compensation bargain." The Supreme Court noted that "[u]nlike the tort of intentional infliction of emotional distress" involved in this case, "the tort of false imprisonment involves *criminal conduct* against the employee's person, not permissible conduct that only becomes intentionally tortious in light of the employer's supposed malicious state of mind." (*Id.* at p. 722.) Impermissible (and perhaps criminal) conduct also was involved in *Hart v. National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420, where the Court of Appeal held workers' compensation was not the employee's exclusive remedy for his employer's assault and battery and intentional infliction of emotional distress. In that case, a coworker allegedly "would grab Hart's genitals, grab Hart around the waist and try to mount him and make sexually suggestive gestures, accompanied by crude remarks." (*Id.* at p. 1424.) Such acts "had a questionable relationship to employment, and were neither a risk, an incident, nor a normal part of Hart's employment." (*Id.* at p. 1430.) Unlike permitting Employees' civil action for alleged emotional injuries caused by the City's knowing failure to provide a safe workplace, permitting the civil actions in *Fermino* and *Hart* "present[ed] none of the dangers recognized in *Cole* and *Johns-Manville* that allowance of such exceptions would undermine

20

the exclusivity provisions of the workers' compensation system." (*Fermino*, at p. 722.)

D.     *Punitive Damages*

Employees' final attack on the summary judgment ruling concerns their claim for punitive damages against Villa. Such damages may be awarded "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." (Civ. Code, § 3294, subd. (a).) Employees contend they raised a triable issue of fact as to whether Villa acted with malice by presenting evidence that he weighed the cost of breaking the lease and relocating them during the window renovation project at the Building against their health and safety and that he decided to move them to another building known to contain asbestos after asbestos-containing debris was found loose in the Building. Employees say, "The trial court improperly dismissed this claim without analyzing [their] evidence." We disagree.

The trial court had no need to address separately the sufficiency of Employees' evidence to sustain an award of punitive damages against Villa. There is no separate cause of action for punitive damages, which are ancillary to a valid cause of action for compensatory damages. (*McLaughlin v. National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1164; *Jackson v. Johnson* (1992) 5 Cal.App.4th 1350, 1355.) Once the trial court ruled the asbestos-related injuries alleged by Employees occurred in the course of employment and the fraudulent concealment exception to the workers' compensation exclusivity rule did not apply, they had no tort claim by which to obtain compensatory and punitive damages. (*McDonald, supra,* 180 Cal.App.3d at p. 303.) The workers' compensation scheme "subsumes" Employees' tort remedies (*Vacanti, supra*, 24 Cal.4th at p. 814), and the

21

City's liability for workers' compensation is "in lieu of any other liability whatsoever" (Lab. Code, § 3600, subd. (a)).  Hence, Employees' request for punitive damages was properly dismissed along with their tort claims.

III.

DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

CASTILLO, J.

22